**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:26-cv-00719-GPG-NRN

601 ASSETS LLC, a Montana limited liability company,

    Plaintiff,

v.

ATLANTIC AVIATION WASHINGTON DULLES, LLC, a Delaware limited liability company (named in the original Complaint as Atlantic Aviation Services Inc.), and

UNITED AIRLINES, INC., a Delaware corporation,

    Defendants.

---

### FIRST AMENDED COMPLAINT AND JURY DEMAND

---

Plaintiff 601 Assets LLC, by and through undersigned counsel, files this First Amended Complaint and Jury Demand against Defendants Atlantic Aviation Washington Dulles, LLC, and United Airlines, Inc., as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), and alleges as follows:

### PARTIES

1. Plaintiff 601 Assets LLC ("Plaintiff" or "601 Assets") is a Montana limited liability company with its principal place of business in Denver, Colorado. Its members are residents of the State of Colorado. Plaintiff owns the Bombardier Challenger 601-3A ER, serial number 5117, registration N601WY (the "Aircraft"), and operates the Aircraft under Part 91 of the Federal Aviation Regulations.

1

2.   Defendant Atlantic Aviation Washington Dulles, LLC ("Atlantic") is a Delaware limited liability company that operates a fixed base operation at Washington Dulles International Airport in Loudoun County, Virginia. As confirmed in Defendant's Corporate Disclosure Statement filed May 4, 2026 (Dkt. No. 12), Atlantic's sole member is Mercury Air Center-Newport News, LLC, a Virginia limited liability company with its principal place of business in Texas. Atlantic is therefore a citizen of Delaware, Virginia, and Texas for purposes of 28 U.S.C. § 1332(a). Plaintiff originally named "Atlantic Aviation Services Inc." as a Defendant. Atlantic Aviation Services Inc., through counsel Wilson Elser Moskowitz Edelman & Dicker, LLP, has identified Atlantic Aviation Washington Dulles, LLC as the proper Atlantic entity for this litigation, and Plaintiff substitutes the proper entity by way of this amendment. The substitution arises out of the conduct, transaction, and occurrence set forth in the original Complaint and relates back under Federal Rule of Civil Procedure 15(c).

3.   Defendant United Airlines, Inc. ("United") is a Delaware corporation with its principal place of business in Chicago, Illinois. United is therefore a citizen of Delaware and Illinois for purposes of 28 U.S.C. § 1332(a). United operates a maintenance facility at Washington Dulles International Airport.

**JURISDICTION AND VENUE**

4.   This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a). Complete diversity of citizenship exists between Plaintiff and Defendants, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5.   Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this District, including (a) Plaintiff's contracting and dispatch decisions for the trip, made from Plaintiff's principal place of

2

business in Denver, Colorado; (b) Plaintiff's communications with Atlantic concerning the

receipt, handling, and parking of the Aircraft, originated from Colorado; (c) Plaintiff's post-loss

communications with Atlantic and its general manager, conducted from Colorado; (d) the loss of

dry-lease and use revenue from Colorado-based scheduled flights; and (e) Plaintiff's expenditures

and consequential out-of-pocket costs, incurred from Colorado.

## FACTUAL ALLEGATIONS

6. On May 16, 2025, Plaintiff delivered the Aircraft to Atlantic at Washington Dulles

International Airport for ground handling, parking, and related fixed base operator services in

exchange for compensation.

7. The Aircraft was airworthy and in good condition when it arrived at Atlantic. The

windshield was free of any cracks, chips, impact marks, or other damage.

8. The flight crew, consisting of PIC David Fetter and SIC Jalen Petersen, conducted

pre-arrival and on-arrival inspections of the Aircraft. The crew observed no damage of any kind

to the Aircraft's windshield.

9. Atlantic accepted custody and control of the Aircraft and placed it on its ramp for

compensation. Plaintiff's delivery of the Aircraft into Atlantic's exclusive custody for

compensation created a bailment for hire under Virginia law.

10. Between May 16, 2025 and May 19, 2025, Atlantic parked the Aircraft on an exposed

ramp position directly in line with a United maintenance hangar.

11. Plaintiff's pilots observed United operating large Boeing aircraft from and around the

United maintenance hangar with engines running above idle and exhaust directed toward

Plaintiff's Aircraft.

3

12. No blast fencing, deflection, or comparable protection was present between the United operations and Plaintiff's Aircraft. Active construction in the immediate vicinity created loose debris in the operating area.

13. On May 19, 2025, during pre-departure checks, Plaintiff's flight crew discovered that the Aircraft's left windshield was cracked.

14. The cracking of the Aircraft's left windshield exhibited multiple distinct impact points consistent with high-velocity debris striking the windshield while the Aircraft was parked on Atlantic's ramp.

15. SIC Jalen Petersen documented the damage with photographs.

16. The damage to the windshield was so extensive that the Aircraft was rendered un-airworthy. The Aircraft could not be safely flown on a normal flight, on a Part 91 ferry flight without passengers, or under an FAA Special Flight Permit. Had the damage been any less severe, Plaintiff would have ferried the Aircraft to its home maintenance facility at Fort Lauderdale Executive Airport (KFXE) for repair by its regular maintenance technicians at materially lower cost. The condition of the windshield foreclosed that option, requiring on-wing repair at Washington Dulles.

17. Immediately upon discovery of the damage, Plaintiff's flight crew notified Atlantic's on-duty ramp manager.

18. Atlantic's ramp manager stated that no one with authority to address damage claims was on site, and directed Plaintiff's personnel through a series of Atlantic employees who failed to respond, or failed to respond meaningfully, for months.

4

19. On October 9, 2025, Plaintiff finally reached Atlantic's general manager, Tim Aldridge. Mr. Aldridge admitted that Atlantic had no bailment agreement with Plaintiff, no liability insurance policy responsive to the loss, and no written limitation of liability of any kind.

20. Mr. Aldridge further admitted that he had not reviewed any surveillance video of Atlantic's ramp during the May 16 to May 19, 2025 period, despite prior representations by other Atlantic personnel that such video had been pulled and was being reviewed.

21. To date, Atlantic has not produced any contract, service agreement, tariff, signage, posted notice, electronic acknowledgment, or other writing limiting its liability for the damage to the Aircraft. In its Answer, Atlantic asserts an unspecified "Service Agreement" as an affirmative defense; Atlantic has not identified that document, produced that document, or specified any term or provision of any such document.

22. Atlantic's receipt of the Aircraft in good condition and its return of the Aircraft in damaged condition while the Aircraft was in Atlantic's exclusive custody and control gives rise to a presumption of negligence under Virginia law and shifts to Atlantic the burden of explanation.

## DAMAGES

23. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and will continue to suffer, substantial damages, including hard repair costs, loss of use, lost dry-lease and use revenue, consequential out-of-pocket expenses, diminution in value of the Aircraft, and other incidental damages.

24. The Aircraft was grounded at Washington Dulles International Airport for eight days while Plaintiff arranged for and completed the on-wing windshield replacement made necessary by Defendants' conduct.

25. Plaintiff retained Empire Aviation technicians to remove and replace the damaged left windshield. Empire Aviation documented multiple impact chips in the windshield glass and confirmed that the cracking originated from those impact points.

26. Empire Aviation's labor, travel, lodging, consumables, and freight charges totaled $32,183.36.

27. Plaintiff was required to source a replacement windshield from ARG Parts at a cost of $45,000.00. The replacement windshield supplied by ARG Parts was a previously delaminated, repaired unit, sold by ARG "as is" with no warranty, as reflected on the face of ARG's May 20, 2025 invoice. No factory-new replacement windshield was available within a timeframe that would have permitted Plaintiff to return the Aircraft to revenue service in a timely manner.

28. Plaintiff's hard repair costs total $77,183.36, comprising $32,183.36 in Empire Aviation labor and related charges and $45,000.00 for the ARG Parts replacement windshield.

29. As a direct and proximate result of the eight-day grounding, Plaintiff lost not less than $50,000 in dry-lease and use revenue, including without limitation $25,000.00 in lost revenue from two dry-lease trips that had been scheduled for May 22, 2025, additional lost dry-lease and use revenue attributable to the balance of the eight-day grounding period, and lost utility and availability revenue, all in amounts to be proven at trial.

30. Plaintiff also incurred consequential FBO storage and handling charges, crew per diem and lodging, deadhead crew transportation, ferry and positioning expenses, and other incidental out-of-pocket costs while the Aircraft was grounded at Washington Dulles, all in amounts to be proven at trial.

31. The Aircraft has suffered diminution in value as a direct and proximate result of Defendants' conduct. The repaired left windshield installed in the Aircraft is a previously

6

delaminated unit, supplied "as is" with no warranty, as reflected on the face of the supplier's invoice. The presence of a previously delaminated, no-warranty windshield in the Aircraft's installation history reduces the fair market value of the Aircraft as compared to a comparable Bombardier Challenger 601-3A ER aircraft with an undamaged or factory-replaced windshield, in an amount to be determined by qualified appraisal and proven at trial.

32. Plaintiff's compensatory damages presently exceed $160,000.00 and are reasonably anticipated to fall within a range of $160,000 to $210,000, exclusive of interest, attorneys' fees and costs, and any award of punitive damages.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### Negligence (Against Atlantic)

33. Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

34. At all relevant times, Atlantic owed Plaintiff a duty to exercise reasonable care in the receipt, handling, parking, monitoring, and protection of the Aircraft while the Aircraft was in Atlantic's custody and control.

35. Atlantic breached its duty by, among other things: (a) parking the Aircraft on an exposed ramp position directly in line with a United maintenance hangar where high-thrust engine operations were ongoing; (b) failing to provide or require blast fencing, deflection, or other protective measures; (c) ignoring known construction debris in the operating area; (d) failing to monitor United's engine operations adjacent to Plaintiff's Aircraft; (e) failing to warn Plaintiff of the hazardous ramp conditions; and (f) failing to preserve and produce relevant surveillance video.

7

36. Atlantic's negligence was a direct and proximate cause of the damage to the Aircraft and the resulting damages described above.

## SECOND CLAIM FOR RELIEF

### Breach of Bailment for Hire (Against Atlantic)

37. Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

38. A bailment for hire existed between Plaintiff and Atlantic. Plaintiff delivered the Aircraft to Atlantic for compensation; Atlantic accepted exclusive custody and control of the Aircraft; and Atlantic was obligated to redeliver the Aircraft in the same condition in which it was received.

39. Atlantic breached the bailment by failing to redeliver the Aircraft in the condition received. The Aircraft was airworthy and free of windshield damage when delivered to Atlantic and was grounded with multiple impact-driven cracks in the left windshield when Plaintiff was finally able to reclaim it.

40. Under Virginia law, the failure of a bailee for hire to redeliver bailed property in the condition received gives rise to a presumption of negligence and shifts the burden of explanation to the bailee. Atlantic has offered no explanation.

41. No contractual limitation of liability applies. Atlantic has admitted, through its general manager, that no bailment agreement, no liability insurance policy responsive to the loss, and no written limitation of liability of any kind exists. Atlantic has produced no document to the contrary.

8

## THIRD CLAIM FOR RELIEF

### Negligence (Against United)

42. Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

43. United owed Plaintiff a duty to exercise reasonable care in the conduct of engine operations on a shared ramp environment, including the duty to coordinate with the operator of the adjacent fixed base operation and to refrain from directing engine thrust toward parked aircraft, particularly in an area containing loose construction debris.

44. United breached that duty by, among other things, conducting engine runs at thrust above idle in a construction zone with loose debris, with exhaust directed toward Plaintiff's Aircraft, and by failing to coordinate with Atlantic or warn aircraft owners or operators of the high-thrust operations.

45. The location, geometry, and impact pattern observed on the Aircraft's left windshield are consistent with high-velocity debris propelled by United's engine operations from the adjacent maintenance hangar in the direction of Plaintiff's Aircraft during the May 16 to May 19, 2025 period. No other source of high-velocity debris capable of producing the observed impact pattern was present at or near Plaintiff's parking position during that window. United's engine operations were the only plausible source of the impact-driven cracking on the Aircraft's left windshield.

46. United's negligence was a direct and proximate cause of the damage to the Aircraft and the resulting damages described above.

9

## FOURTH CLAIM FOR RELIEF

### Gross Negligence (Against Both Defendants)

47. Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

48. Atlantic, with knowledge of the active construction in the operating area and the ongoing high-thrust engine operations at the adjacent United maintenance hangar, placed the Aircraft in an exposed blast path and left it there without adequate monitoring, protective measures, or warning to the Plaintiff.

49. United knew that other aircraft, including Plaintiff's Aircraft, were parked on the shared ramp adjacent to its maintenance hangar. United knew, or in the exercise of even slight care should have known, that loose construction debris was present in the immediate operating area, that no blast fencing or comparable deflection was in place between its operations and parked aircraft, and that high-thrust engine operations from its maintenance hangar would propel that debris in the direction of those aircraft. With that knowledge, United nonetheless conducted high-thrust engine operations directed toward parked aircraft, including Plaintiff's Aircraft, without coordinating with Atlantic, without warning aircraft owners or operators, and without taking any steps to deflect or contain the resulting blast.

50. Both Defendants acted with utter and reckless disregard for known and obvious risks of damage to Plaintiff's property. Their conduct demonstrates a degree of care substantially below that which an ordinarily prudent operator would exercise under like circumstances.

**FIFTH CLAIM FOR RELIEF**

**Negligent Failure to Warn (Against Both Defendants)**

51. Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

52. Atlantic knew or should have known that United was conducting hazardous high-thrust engine operations on the adjacent ramp area. Atlantic failed to warn Plaintiff of this hazard before accepting custody of the Aircraft and placing it in the affected ramp position, and failed to warn Plaintiff after the Aircraft was so placed.

53. United knew or should have known that other aircraft were parked on the ramp adjacent to its maintenance hangar. United failed to warn Atlantic, Plaintiff, or other affected aircraft owners and operators before performing the high-thrust engine operations that resulted in the debris event.

54. Defendants' failures to warn were a direct and proximate cause of the damage to the Aircraft and the resulting damages described above.

**SIXTH CLAIM FOR RELIEF**

**Willful and Wanton Conduct (Against Atlantic) (Punitive Damages)**

55. Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

56. Atlantic's conduct in the receipt, handling, custody, and post-loss response to the Aircraft constitutes willful and wanton conduct warranting an award of punitive damages under Virginia law.

57. Atlantic accepted aircraft into its custody at one of the busiest airports in the world with, by the admission of its own general manager, no bailment agreement, no liability insurance

11

Case No. 1:26-cv-00719-GPG-NRN    Document 13    filed 05/06/26    USDC Colorado
pg 12 of 15

responsive to in-custody damage, and no written limitation of liability of any kind. Atlantic's

conscious decision to accept high-value aircraft into its custody under these conditions reflects a

conscious indifference to the rights and property of those who entrusted their aircraft to its care.

58. Atlantic placed the Aircraft on an exposed ramp position directly in line with a United

maintenance hangar where it knew, or in the exercise of even slight care should have known, that

high-thrust engine operations were being conducted in proximity to loose construction debris.

59. After the loss, Atlantic affirmatively misled Plaintiff. Atlantic's personnel represented

that surveillance video had been pulled and was being reviewed, while Atlantic's general

manager later admitted that he had never reviewed any such video. Atlantic took no steps to

preserve, review, or produce that video.

60. Atlantic's months-long pattern of routing Plaintiff through unresponsive personnel, its

failure to acknowledge or address the loss, and its failure to preserve material evidence reflect a

conscious indifference to the rights of others sufficient to support an award of punitive damages.

61. Plaintiff is entitled to an award of punitive damages against Atlantic in an amount to

be determined by the trier of fact, up to the statutory cap imposed by Virginia Code § 8.01-38.1.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff 601 Assets LLC respectfully prays that this Court enter

judgment in its favor and against Defendants Atlantic Aviation Washington Dulles, LLC, and

United Airlines, Inc., jointly and severally where appropriate, awarding the following relief:

A. Compensatory damages in an amount to be proven at trial, presently estimated to fall

within a range of $160,000 to $210,000, including without limitation:

    i.  Hard repair costs of $77,183.36, comprising $32,183.36 in Empire Aviation labor and related charges and $45,000.00 for the ARG Parts replacement windshield;

    ii.  Lost dry-lease and use revenue of not less than $50,000 attributable to the eight-day grounding of the Aircraft;

    iii.  Consequential FBO storage and handling charges, crew per diem and lodging, deadhead crew transportation, ferry and positioning expenses, and other incidental out-of-pocket costs incurred during the eight-day grounding, in amounts to be proven at trial; and

    iv.  Diminution in value of the Aircraft, in an amount to be determined by qualified appraisal and proven at trial;

B.  Punitive damages against Defendant Atlantic Aviation Washington Dulles, LLC, in an amount to be determined by the trier of fact, up to the statutory cap imposed by Virginia Code § 8.01-38.1;

C.  Pre-judgment and post-judgment interest at the maximum rate allowed by law;

D.  Plaintiff's costs of suit and attorneys' fees as allowed by law; and

E.  All other and further relief that this Court deems just and proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated this 6th day of May, 2026.

Respectfully submitted,

BIZJET LAW PLLC

s/ Andrew C. Pistor
Andrew C. Pistor
Colorado Bar No. 33760
600 17th Street
Suite 2800 South
Denver, Colorado 80202
Telephone: 720-807-5011
Email: Andy@bizjetlaw.com

*Counsel for Plaintiff 601 Assets LLC*

14

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2026, I electronically filed the foregoing FIRST

AMENDED COMPLAINT AND JURY DEMAND with the Clerk of the Court using the

CM/ECF system, which will send notification of such filing to all counsel of record, including:


> Robert "Tripp" Hall, III, Esq.
> Wilson Elser Moskowitz Edelman & Dicker, LLP
> 1225 17th Street, Suite 1700
> Denver, Colorado 80202
> robert.hall@wilsonelser.com
> Counsel for Defendant Atlantic Aviation Washington Dulles, LLC


I further certify that, in accordance with Federal Rule of Civil Procedure 5(a)(2) and Rule

4, a true and correct copy of the foregoing First Amended Complaint and Jury Demand, together

with a Summons issued by the Clerk of the Court for the First Amended Complaint, is being

served by personal service on Defendant United Airlines, Inc., through its registered agent for

service of process in Colorado:

> United Airlines, Inc.
> c/o CT Corporation System (Registered Agent)
> 7700 East Arapahoe Road, Suite 220
> Centennial, Colorado 80112


> s/ Andrew C. Pistor
> Andrew C. Pistor


15